IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff/Respondent, vs. ROY ALLEN SHOSTAK, Defendant/Movant. | CR 21–02–H–BMM ORDER |

A grand jury indicted Defendant/Movant Roy Allen Shostak for possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1) on April 8, 2021.  (Doc. 1.)  Shostak was convicted following a one-day jury trial in July 2021. (*See* Doc. 45). The Court sentenced Shostak to 164 months of custody on November 4, 2021. (*See* Doc. 50).  The Ninth Circuit affirmed Shostak's conviction in November of 2022.  (Docs. 65, 66.)  Shostak now seeks federal habeas relief under 28 U.S.C. § 2255.  (Docs. 69, 90.)  Shostak's motion will be denied.

**BACKGROUND**[1]

**I.   Trial**

---

[1] The trial transcript is cited as "(Tr. [page no.].)"

A one-day jury trial was held in July 2021. (*See* Doc. 61 (transcript), 45 (verdict).) The Government called 5 witnesses, all but one of which were law enforcement officers. (*See* Doc. 40.) The defense called no witnesses. The Government's case and the defense's theory are outlined below.

### A.     The Case Against Shostak

Helena Police Department Sergeant Randy Ranalli received information from a confidential source in May 2020 that Shostak was frequenting two addresses in the Helena area and driving a black Jaguar sedan. (Tr. 37.) Law enforcement was looking for Shostak at that time because he was considered a probation absconder from state probation and parole. (Tr. 37.) An evidence technician working for the Helena Police Department corroborated the fact that Shostak was driving a black Jaguar, as Shostak recently had driven the vehicle to the police impound lot to pick up a friend's car. (Tr. 97.)

Sergeant Ranalli surveilled the two addresses provided by the confidential source, ultimately observing both the black Jaguar and Shostak at the second address on May 29, 2020. (Tr. 39–41.) Sergeant Ranalli observed several people going in and out of the address that day, including Shostak. (Tr. 41–42.) then saw Shostak exit the address, open the driver's door of the Jaguar, reach inside, and place a backpack on the front passenger seat. (Tr. 42.) Sergeant Ranalli did not see anyone else approach the vehicle or touch the backpack during his surveillance.

2

(Tr. 43, 67.) Sergeant Ranalli called for additional officers in order to execute an arrest when Shostak went back inside. (Tr. 43.) Shostak was arrested without incident, and law enforcement seized the Jaguar after Sergeant Ranalli observed what appeared to be a marijuana pipe in plain view on the driver's seat. (Tr. 43–45.) Sergeant Ranalli also called the registered owner of the Jaguar, Jason Conklin, who confirmed that he had sold it on May 16, 2020, to Shostak over Facebook Marketplace. (Tr. 91–102.)

    Law enforcement searched the Jaguar on June 5, 2020, pursuant to a warrant. (Tr. 46.) Law enforcement found a Motorola cell phone and a bill of sale from "Jason Conklin" for the Jaguar dated May 16, 2020, in the glove department. (Tr. 49; Ex. 7.) Law enforcement also searched the backpack Shostak had placed on the front seat. (Tr. 50.) Law enforcement found a Samsung cell phone inside the front pocket. (Tr. 53.) Law enforcement discovered some clothing and three baggies containing a white substance that field tested positive for methamphetamine inside the main pocket. (Tr. 54.) Law enforcement also found documents in the Jaguar containing Shostak's personal information and credit card information for a specific card. (Tr. 56–57.) The officers, subsequently, sought search warrants for the two cell phones and ultimately discovered that their message and text history showed numerous drug references and transactional language. (Tr. 60–63, 72, 82–84, 93.) The contents of the Samsung phone also

showed that the phone belonged to Shostak and contained conversations regarding his purchase of the Jaguar. (Tr. 60, 74–75, 77, 86–87.)

Law enforcement sent the baggies of suspected methamphetamine to a Drug Enforcement Agency lab. (Tr. 105–07.) All three baggies returned positive for methamphetamine, totaling 356.8 grams of pure methamphetamine. (Tr. 109; Ex. 1.)

### B. The Defense Theory

Shostak's defense at trial was that while the Jaguar may have been his, the Government failed to show that he knew what was in the backpack. (Tr. 139–40.) More specifically, defense counsel focused on the fact that law enforcement had not seen Shostak open the backpack or place drugs in the backpack. (Tr. 66.) Defense counsel elicited testimony from Sergeant Ranalli that law enforcement found clothing in the backpack with the methamphetamine. Sergeant Ranalli testified that law enforcement did not retain the clothing as evidence or perform any test on the clothing, such as for fingerprints or DNA. (Tr. 66; *see* Tr. 140–41.) Sergeant Ranalli also confirmed that there were several other occupants at the address that day, and that many of those people were known drug users. (Tr. 63–65.) In closing, defense counsel made the following argument regarding Sergeant Ranalli:

> [he] never collected any fingerprint evidence, no DNA evidence. They didn't test the clothing to make sure it was Roy's. Instead, again, this

4

> case boils down to the officer acting on a hunch, that he saw him place a backpack in the car, and it must have drugs. It must have been Roy's.
>
> But, ladies and gentlemen, the government is required to do more than that, to act more than on a hunch, not send - - not to have somebody place a backpack in a car and then face this. I submit to you that the government hasn't proven that Mr. Shostak knew of the presence of the drugs in the backpack on May 29th, 2020. And because they haven't proven that, they certainly cannot prove that he acted with an intent to distribute. So you must find him not guilty.

(Tr. 141.) As it relates to drug transactions on the cell phone, defense counsel emphasized the paucity of drug-related texts on or around the day of Shostak's arrest. (Tr. 89, 139.)

The Defense unsuccessfully had sought to suppress the items found in the Jaguar before trial. (*See* Docs. 14, 22, 26). The defense also unsuccessfully moved for a judgment of acquittal at the close of the Government's case under Rule 28 of the Federal Rules of Criminal Procedure on the ground that "the government and its evidence hasn't proven that Mr. Shostak knew of the presence of the drugs in the backpack," (Tr. 110).

**II.    The Verdict, Sentencing, and Appeal**

Shostak was ultimately convicted of possession with intent to distribute 50 grams or more of pure methamphetamine, triggering a mandatory minimum 10-year sentence. (Doc. 45.) A sentencing hearing was held on November 4, 2021. (*See* Doc. 60.) With a total offense level of 32 and a criminal history category of VI, Shostak's advisory Guideline range was 210 to 262 months. (*Id.* at 5.) The

5

Court ultimately sentenced Shostak to 164 months of custody, a downward variance based on his age and the costs of his medical care. (*Id.* at 19.) Shostak appealed. (Doc. 55.) The Ninth Circuit affirmed the denial of his pretrial motion to suppress in an unpublished memorandum disposition in November of 2022. (Doc. 65).

### III.  Current Motion

Shostak timely filed a pro se motion to vacate under 28 U.S.C. § 2255 on April 24, 2023, within the one year limitation period. (Doc. 69.) Counsel was appointed. (Doc. 73). Counsel filed an amended § 2255 motion on May 10, 2024. (Doc. 90). In his amended motion, Shostak argues that: (1) the government violated his due process rights under either *California v. Trombetta*, 467 U.S. 479 (1984), or *Arizona v. Youngblood*, 488 U.S. 51 (1988), by failing to retain the clothing found in the backpack, and (2) his trial attorney, Joslyn Hunt, provided ineffective assistance of counsel by failing to request a spoliation instruction regarding that lost or destroyed evidence. (*See Id.*) Shostak filed three exhibit photographs Sergeant Ranalli took of the clothing after it was removed from the backpack in support of his motion. (Docs. 90-1, 90-2, 90-3.)

The Government argues that Shostak's due process argument is procedurally defaulted. The Government further contends that Shostak's ineffective assistance of counsel claim fails because Shostak was not entitled to a spoliation instruction

6

and, even if he fails to show prejudice. (Doc. 95.) Shostak replied on March 25, 2025. (Doc. 101.)

## ANALYSIS

Shostak's request for habeas relief relies entirely on the clothing that was found in the backpack that was not retained or tested by law enforcement. Shostak argues that the potentially exculpatory evidence was withheld in violation of the Due Process Clause and that his trial counsel's failure to request a spoliation instruction on this point amounted to ineffective assistance of counsel in violation of the Sixth Amendment. Shostak's first argument is procedurally defaulted, and his second argument fails on the merits. Shostak's request for habeas relief will be denied.

### I.    Due Process

Shostak first argues that Sergeant Ranalli violated his "due process rights when he lost material exculpatory evidence without first allowing Mr. Shostak or his counsel to inspect that evidence." (Doc. 90 at 5.) The government argues that this claim is procedurally defaulted because Shostak failed to raise it on direct appeal and has not shown cause of the default. The Court agrees.

"[C]laims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice." *Massaro v. United States*, 538 U.S. 500, 504 (2003); *Bousley v. United States*, 523 U.S. 614, 622 (1988).

7

"Cause" means "some objective factor external to the defense" that "impeded" the defendant's ability to raise the claim in his criminal case. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). A petitioner can show cause for failure to raise the claim on direct appeal if he can show that "the claim rests upon a new legal or factual basis that was unavailable at the time of direct appeal." *United States v. Braswell*, 501 F.3d 1147, 1150 (9th Cir. 2007) (citing *Murray*, 477 U.S. at 488).

Even if a petitioner successfully shows cause, "the prejudice prong of the test requires demonstrating 'not merely that the errors at trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Id.* (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)) (alternations omitted). Shostak did not raise his due process claims on direct appeal. *See United States v. Shostak*, 2022 WL 17176384 (9th Cir. Nov. 23, 2022). Shostak can show neither cause for failing to raise the claims nor actual prejudice from the alleged violation. Shostak's claims are procedurally defaulted.

Shostak argues that this issue could not have been raised on direct appeal because neither the clothing nor the photographs of the clothing taken by Sergeant Ranalli were introduced at trial. As a result, "the record on appeal contained no visual or evidentiary basis to evaluate whether the clothing supported a third-party ownership theory." (Doc. 101 at 2.) Shostak correctly notes that habeas can be the

8

appropriate forum for claims that require development of the factual record. *See Massaro*, 538 U.S. at 505. Shostak knew that the clothing had not been collected or tested before trial. (*See* Tr. 66 (defense counsel eliciting testimony on this front).) Nothing prevented Shostak from raising the issue at trial or, failing that, on appeal. Shostak does not argue, for example, that the Government withheld the photographs of the clothing or any information about the clothing until after trial. To the contrary, the record evidence shows this information was part of the defense's closing argument for the jury. (*See* Tr. 141.)

Possibly recognizing this issue, Shostak pivots a bit in his reply, arguing that the failure to introduce this evidence at trial, or to make it an issue on appeal might qualify as ineffective assistance of trial and appellate counsel. To be sure, ineffective assistance of counsel may provide "cause" to permit consideration of an otherwise procedurally defaulted issue. *See Murray*, 477 U.S. at 488–89. That is not the case here. To prevail on an ineffective assistance of counsel claim, a petitioner must show that (1) "counsel's representation fell below an objective standard of reasonableness," and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). The petitioner must show not only that there was a deficiency, but that the deficiency was prejudicial. *Id.* at 692. "[I]t is unnecessary to consider the prejudice prong of

9

*Strickland* if the petitioner cannot even establish incompetence under the first prong." *Siripongs v. Calderon*, 133 F.3d 732, 737 (9th Cir. 1998).

Shostak has not shown that counsel's failure to raise this due process issue was constitutionally deficient. The Due Process Clause does not "impos[e] on the police an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution." *Youngblood*, 488 U.S. at 58 (citing *Lisenba v. California*, 314 U.S. 219, 236 (1941)). Rather, "[a] defendant has a constitutionally protected privilege to request and obtain from the prosecution evidence that is either material to the guilt of the defendant or relevant to the punishment to be imposed." *Trombetta*, 467 U.S. at 485 (citing *Brady v. Maryland*, 373 U.S. 83, 84 (1963)).

"To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* at 489 (internal citation omitted). On the other hand, if this materiality standard is not met and the evidence at issue is merely "potentially useful," a defendant must "show bad faith on the part of the police" to establish a due process violation. *Youngblood*, 488 U.S. at 58. Evidence is merely potentially useful when "no more can be said than

10

that it could have been subjected to tests, the results of which might have exonerated the defendant." *Id.* at 57.

The clothing found in the backpack in this case falls into the latter category. The presence of clothing in the backpack that did not match Shostak's size "might conceivably have contributed to [his] defense[]" *Trombetta*, 467 U.S. at 489. the trial evidence showed that Shostak was the only person to handle the backpack after it left the residence and that he had text and Facebook messages on his phone showing an intent to distribute drugs. "Even if the clothing were seized, tested, and tested negative for Shostak's DNA, it would not have exonerated him from possession with intent to distribute methamphetamine." (Doc. 95 at 11–12.) Put differently, all the elements of the charged offense were met even if the clothing belonged to someone else. As a result, Shostak would have been required to show that law enforcement acted in bad faith in failing to seize and/or test the clothing. *See Youngblood*, 488 U.S. at 58. Law enforcement acts in bad faith by failing to preserve evidence when law enforcement knows "of the apparent exculpatory value of the evidence at the time it was lost or destroyed." *United States v. Zaragoza-Moreira*, 780 F.3d 971, 977–78 (9th Cir. 2015).

Sergeant Ranalli did not retain the clothing found in the backpack or perform any testing on it. Contrary to Shostak's characterization, however, this conduct does not compel the conclusion that Sergeant Ranalli "believed [the

evidence] was harmful to his case against Mr. Shostak and, therefore, [was] exculpatory." (Doc. 90 at 7.) Sergeant Ranalli photographed the clothing, (*see* Docs. 90-1, 90-2, and 90-3), and released it, as it was not contraband. All the other items taken from the backpack and retained by law enforcement were either drugs or drug paraphernalia. (*See* Doc. 22-2 at 10.) Shostak fails to show that Sergeant Ranalli acted in bad faith. *See United States v. Sivilla*, 714 F.3d 1168, 1171–72 (9th Cir. 2013) (holding no bad faith where officer took pictures of the drug smuggler's vehicle and the drug compartment but did not retain the vehicle itself). Shostak's due process argument would not have succeeded at either the trial or on appeal. Shostak cannot show prejudice from the counsels' failure to raise the issue.

Based on the foregoing, the Court dismisses Shostak's due process claim as procedurally defaulted.

## II. Ineffective Assistance of Counsel

To prevail on an ineffective assistance of counsel claim, a petitioner must show that (1) "counsel's representation fell below an objective standard of reasonableness," and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Strickland*, 466 U.S. at 687–88. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of

12

reasonable professional judgment." *Id.* at 690.  The U.S. Supreme Court has cautioned that "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689.

Shostak alleges that trial counsel provided ineffective assistance of counsel for failing to request a spoliation instruction regarding the clothing found in the backpack. This claim fails both prongs of the *Strickland* test. Shostak was not entitled to a spoliation instruction and the proof against Shostak established guilt regardless of the clothing's ownership.  In evaluating the government's conduct in an alleged spoliation case, "[c]ourts must balance 'the quality of the Government's conduct' against 'the degree of prejudice to the accused,' where the government bears the burden of justifying its conduct and the accused of demonstrating prejudice." *Sivilla*, 714 F.3d at 1173 (quoting *United States v. Loud Hawk*, 628 F.2d 1139, 1152 (9th Cir. 1979 (en banc) (Kennedy, J., concurring)).  In evaluating the government's conduct,

> the court should inquire whether the evidence was lost or destroyed while in its custody, whether the Government acted in disregard for the interests of the accused, whether it was negligent in failing to adhere to established and reasonable standards of care for police and prosecutorial functions, and, if the acts were deliberate, whether they were taken in good faith or with reasonable justification.  It is relevant also to inquire whether the government attorneys prosecuting the case have participated in the events leading to loss or destruction of the

> evidence, for prosecutorial action may bear upon existence of a motive to harm the accused.

*Id.* (internal quotation marks and alteration omitted).

Sergeant Ranalli photographed the clothing from the backpack but did not perform any tests or retain the clothing as evidence. This decision was made before the prosecution of the case and adhered to a reasonable standard of care as the clothing was neither contraband nor inherently exculpatory. In total, the quality of the government's conduct was acceptable. Shostak therefore faces an uphill battle in showing prejudice tips the scales in his favor:

> In analyzing prejudice, the court must consider a wide number of factors including, without limitation, the centrality of the evidence to the case and its importance in establishing the elements of the crime or the motive or intent of the defendant; the probative value and reliability of the secondary or substitute evidence; the nature and probable weight of factual inferences or other demonstrations and kinds of proof allegedly lost to the accused; the probable effect on the jury from absence of the evidence, including dangers of unfounded speculation and bias that might result to the defendant if adequate presentation of the case requires explanation about the missing evidence.

*Id.* at 1173–74 (internal quotation marks omitted).

The presence of clothing that did not belong to Shostak or did not fit him could have been potentially exculpatory. This possibility does not undermine the evidence of possession with intent to distribute established by the other proof presented in the case. The government produced photographs of the clothing that could have been used in the alternative to a spoliation instruction. The facts did

14

not support the issuance of a spoliation instruction. I was reasonable for defense counsel to not seek a spoliation instruction.

Finally, Shostak cannot show prejudice under *Strickland* from the failure to give such an instruction. The Ninth Circuit Model Instructions merely state that an adverse inference "may" be inferred for the government's failures. *See* Ninth Cir. Model Jury Instr. Crim. No. 3.19 (2022). Given the other evidence presented in the case, even with an adverse inference instruction Shostak fails to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Based on the foregoing, the Court denies Shostak's ineffective assistance of counsel claim.

## IV. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2255 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484

15

(2000)). The Court recognizes that jurists of reason could disagree with the Court's resolution of these claims. The Court will issue a COA.

## CONCLUSION

Based on the foregoing, IT IS ORDERED:

1. Shostak's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 (Docs. 69, 90) is DISMISSED in PART and DENIED in PART.

2. A certificate of appealability is GRANTED. The clerk shall immediately process the appeal if Shostak files a Notice of Appeal.

3. The clerk shall ensure that all pending motions in this case and in CV 23–26–H–BMM are terminated and shall close the civil file by entering judgment in favor of the United States and against Shostak.

DATED this 4th day of February, 2026.

_____
Brian Morris, Chief District Judge
United States District Court